# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MARISELA DELEON,                               )
                                               )
                    Plaintiff,                 )
                                               )          CIVIL ACTION
v.                                             )
                                               )          No. 17-1190-JWL
NANCY A. BERRYHILL,                            )
Acting Commissioner of Social Security,        )
                                               )
                    Defendant.                 )
_____)


## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.     Background

Plaintiff argues that the Administrative Law Judge (ALJ) erred in evaluating the medical opinion evidence of Dr. Snodgrass, both by failing to apply the correct legal standard and by failing to accord appropriate weight; and "erred by adopting Dr. Tawadros'[s] assessment over Dr. Snodgrass'[s] opinion." (Pl. Brief 11). She argues

that the ALJ also erred at step four of the sequential evaluation process in that she failed to apply properly the three-phase analysis of Plaintiff's past relevant work as required by Soc. Sec. Ruling (SSR) 82-62 and explained in Winfrey v. Chater, 92 F.3d 1017 (10th Cir. 1996).  She seeks a finding of disability, or remand for further administrative proceedings.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record,

2

nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses the claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process--determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). Here, the ALJ decided the case at step four, and the burden did not shift to the Commissioner.

The court considers the issues in the order presented in Plaintiff's Brief and finds no error in the ALJ's decision.

## II.     Medical Opinion Evidence

Plaintiff argues that Dr. Snodgrass and his nurse-practitioner, Ms. Snodgrass, treated Plaintiff, and that based on that treatment "Dr. Snodgrass provided a physical Medical Source Statement ('MSS') dated June 25, 2014." (Pl. Br. 5). She summarized Dr. Snodgrass's opinion and noted that "this MSS supports [Ms.] Deleon's argument that she cannot engage in substantial gainful activity ('SGA')." Id. at 6. She argues that Dr. Snodgrass's opinion is supported by the record evidence, contrary to the ALJ's findings.

Id. at 8-10.  She argues that "the ALJ erred by adopting Dr. Tawadros'[s] assessment over Dr. Snodgrass'[s] opinion." Id. at 11-12.  Finally, Plaintiff argues that the ALJ failed to consider every regulatory factor for weighing medical opinions, and "only partially considered one factor, supportability, although she couched it as consistency." (Pl. Br. 13).  She argues how that, in her view, if the other factors are properly considered, "Dr. Snodgrass's opinions should have been entitled to great weight." Id. at 14.

The Commissioner argues that "the ALJ made reasonable findings that are supported by substantial evidence in the record as a whole, and the Court should thus affirm." (Comm'r Br. 6).  She argues, "The ALJ Reasonably Weighed the Opinions and Substantial Evidence Supports the ALJ's Adoption of a Middle Ground in the RFC Assessment." Id. 6-11.  The Commissioner argues that the ALJ thoroughly discussed the record evidence, considered the medical opinions of Dr. Snodgrass and Dr. Tawadros, explained her reasons for discounting both opinions, and "adopted a middle ground in the RFC assessment that did not embrace either opinion." Id. at 7.  She summarizes the ALJ's reasons for discounting each opinion, and argues that the record evidence supports those reasons, id. at 7-8, and that the ALJ appropriately "chose a middle ground between the opinions of Dr. Snodgrass and Dr. Tawadros in assessing Plaintiff's RFC." Id. at 9 (citing Smith v. Colvin, 821 F.3d 1264, 1268 (10th Cir. 2016); and Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012)).  Finally, the Commissioner argues that the ALJ appropriately considered the regulatory factors and appropriately assessed an RFC more

restrictive than Dr. Tawadros's opinion but less restrictive than Dr. Snodgrass's opinion. (Comm'r Br. 10-11).

## A.   Standard for Weighing Medical Opinions

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. § 404.1527(a)(2).  Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations.  Id.; SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2018).  A physician or psychologist who has treated a patient frequently over an extended period of time (a treating source)[1] is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight."  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).  But, "the opinion of an examining physician [(a nontreating

---

[1]The regulations define three types of "acceptable medical sources:"

"Treating source:"  an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. §§ 404.1502, 416.902.

"Nontreating source:"  an "acceptable medical source" who has examined the claimant, but never had a treatment relationship.  Id.

"Nonexamining source:"  an "acceptable medical source" who has not examined the claimant, but provides a medical opinion.  Id.

source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physicians opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2018) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record. Id. "[I]f the

opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. § 404.1527(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the opinion. Id. 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

**B.** **The ALJ's Findings**

In his decision, the ALJ considered and summarized the record evidence. (R. 14-15, 17-21). He explained the relative weight he accorded the medical opinions of Dr. Snodgrass and of Dr. Tawadros. Id. at 21-22. Plaintiff quoted the ALJ's discussion in this regard (Pl. Br. 6-7), and the court will not repeat it here. The ALJ explained her reasons for discounting the opinions of the physicians: Because Ms. Snodgrass, ARNP, rather than Dr. Snodgrass was "the <u>primary care provider</u> for the claimant;" … "Dr. Snodgrass did not fill out the section of the [MSS] form concerning the nature, frequency and length of contact;" his opinion was not supported by Plaintiff's treatment records; it was not supported by objective evidence of pain behaviors in light of the ALJ's discussion of the record evidence; his opinions regarding Plaintiff's sitting, standing, and walking were not explained in terms of the record supported by functional assessments, and are less severe than Plaintiff's testimony; his opinion that Plaintiff would have problems working a full-time job is on an issue reserved to the Commissioner; and his opinions were not updated after Plaintiff's knee replacement surgery. (R. 21-22) (emphasis in original). She found that Dr. Tawadros's walking and standing restrictions were not supported by the record, and although her opinion had not been updated after Plaintiff's knee replacement surgery, it was "basically supported by the medical evidence as discussed in this decision, especially the findings of stability and relief found in Exhibit 19F." Id. at 22.

## C.    Analysis

The ALJ's rationale in evaluating the medical opinions is supported by the record evidence and Plaintiff has not established otherwise. Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

Plaintiff argues that Dr. Snodgrass treated Plaintiff and was the supervising physician of Ms. Snodgrass, but does not argue that Dr. Snodgrass was Plaintiff's primary care provider. As Plaintiff argues, Dr. Snodgrass's practice began treating Plaintiff on September 10, 2012 and continued treating her through December 11, 2015. (R. 458-67, 562-90, 613-25, 635-717). However, in each of the treatment notes Ms. Snodgrass is listed as the "provider," and, while Dr. Snodgrass is always listed as the Supervising physician, he is never listed as the provider. Notably, Dr. Snodgrass prepared his MSS on June 25, 2014, and all of the treatment records beginning on June 10, 2014 are electronically signed by both Dr. Snodgrass as the supervising physician and by Ms. Snodgrass as the provider, whereas none of the treatment records before that date are signed by either Dr. Snodgrass or Ms. Snodgrass. As the ALJ found, these facts

coupled with the fact that Dr. Snodgrass did not complete the portion of his MSS

concerning the nature, frequency, and length of contact with Plaintiff, are specific,

legitimate reasons to discount his opinion.

Plaintiff next argues that the ALJ's finding that "there is no objective evidence to

support a severe condition with any nerve root involvement" (R. 19), is erroneous

because the results of an MRI of her lumbar spine on November 14, 2012 stated:

> At the L5-S1, there is focal protruded disc on the right side and affecting
> the nerve root in the right lateral recess but not creating spinal stenosis.
> Neuroforamen are not narrow at this level.
>
> IMPRESSION:
> A small bulging disc on the right side affecting the right nerve root in the
> lateral recess at the L5-S1 noted. Both neuroforamen appears [sic]
> unremarkable.

(Pl. Br. 8) (quoting R. 546) (emphasis in Pl. Br.). However, the ALJ acknowledged the

November 14, 2012 MRI in the same paragraph in which she found "there is no objective

evidence to support a severe condition with any nerve root involvement," and she

explained the finding:

> As to her back problems, the claimant has alleged lower back pain, often
> stating she has a bulging disc, which is supported in the medical record, but
> the lack of stenosis does not support her allegations of severity. This
> condition would be exacerbated by her obesity. A report in November
> 2012 noted a small bulging disc, with some impact to the right nerve root,
> but no impact to the neuroforamin. [sic] (Exhibit 4F) Medical imagery in
> September 2012 of the cervical and lumbar spines showed no severe
> problems and the images were within normal limits. (Exhibit 2F at 7-8) In
> Febrnary 2013, early degenerative conditions were noted and the claimant
> was started on epidural treatments with some relief. (Exhibit 15F at 2-3)
> However, no stenosis or canal impingement was noted. The claimant was
> assigned to physical therapy and advised to begin a weight loss program.
> In August 2013, the doctor reported negative straight leg raising and

FABER tests, and did not recommend any surgical intervention. The claimant was advised to begin home exercises. The claimant has continued to report back pain, of varying severity with decreased range of motion noted. (Exhibit 19F) However, there is no objective evidence to support a severe condition with any nerve root involvement. This condition is reported in conjunction with her lupus, which one provider called "questionable" (Exhibit 20F at 33), and her rheumatoid arthritis, which contributes to overall reported joint pain. (Exhibit 19F) In June and July of 2014, she reported that her arthritis was "mild" but worsening, and the claimant described her joint pain as mere stiffness, without mention of the severe limitations noted above.

(R. 19) (emphasis added). As the ALJ noted in her decision, the lack of stenosis does not support Plaintiff's allegations of severity, and the MRI relied on by Plaintiff specifically notes that the "focal protruded disc" is "not creating spinal stenosis." (R. 546). The court finds no reversible error. While the court might not have reached the same conclusion, it cannot find that the evidence will not support the conclusion reached.

Plaintiff is correct that the ALJ found, and the evidence supports finding, severe impairments of "obesity, status post left knee replacement, rheumatoid arthritis, degenerative disc disease of the lumbar spine, lupus, and a history of right wrist disorder-status post surgery" (R. 13) (bolding omitted), but the mere presence of severe impairments does not equate to disability, else the sequential evaluation process would always end with step two.

Plaintiff's argument that the ALJ considered only one of the regulatory factors for evaluating medical opinions and thereby inadequately considered the factors must also fail. Plaintiff acknowledges that the decision need not explicitly discuss every regulatory factor, but quotes an unpublished opinion of the Tenth Circuit for the proposition that

12

"the record must reflect that the ALJ <u>considered</u> every factor in the weight calculation."

(Pl. Br. 13) (quoting <u>Anderson v. Astrue</u>, 319 F. App'x 712, 718 (10th Cir. 2009)

(emphasis in <u>Anderson</u>)). The court notes that the <u>Anderson</u> decision is unpublished and

therefore not binding on this court. Moreover, the <u>Anderson</u> court also relied upon an

alternative basis to support its decision: "Even if we were persuaded that the ALJ had

considered these other factors, the ALJ also applied an incorrect legal standard in

assessing supportability." <u>Andersen</u>, 319 F. App'x at 723. That fact suggests that the

requirement for an ALJ's decision to <u>reflect</u> consideration of every factor is <u>dicta</u>.

Nevertheless, this court finds that the ALJ's decision here reflects that she considered all

of the regulatory factors.

First, the ALJ stated that she had "considered opinion evidence in accordance with

the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (R.

17). As discussed above, she also considered whether Dr. Snodgrass had a treatment

relationship with Plaintiff and noted that he did not complete the portion of his MSS

concerning the nature, frequency, and length of contact with Plaintiff. She discussed the

degree Dr. Snodgrass's opinion was supported by record evidence, the consistency

between the opinion and the record evidence as a whole, and other factors as discussed

above. To the extent she did not expressly <u>discuss</u> whether Dr. Snodgrass is a specialist

in the area of his opinion, she is not required to do so, and Plaintiff has shown no

prejudice from that suggested error.

Plaintiff's remaining arguments are merely an explanation how, in her view, the record should be understood to support Dr. Snodgrass's opinion of disability, which the court has already addressed above.

## III.    Step Four

Plaintiff claims the ALJ erred in applying the three-phase analysis of past relevant work (PRW) at step four of the sequential evaluation process because she "did not make any findings of fact regarding the physical and mental demands of [Ms.] Deleon's PRW as a regional case manager (intake worker)."  (Pl. Br. 17).  Plaintiff points out that "she never provided any information regarding the mental and physical demands of this job" on any of the forms she completed for the Social Security Administration (SSA), although she admits that Plaintiff was questioned at the first ALJ hearing regarding her performance of this work.  Id. at 17-19.  She argues that the vocational expert (VE) "did not identify the physical and mental demands of the jobs with the specificity required in Winfrey."  Id. at 19.  She argues that her testimony that the job involved "a lot of walking" demonstrates that the job did not meet the definition of sedentary work requiring no more than two hours walking in an eight-hour workday.  And, she argues that the "job does not remotely match the description of the job for the DOT [(Dictionary of Occupational Titles)] code given"—195.107-030 (Social Worker, Medical)—but is more appropriately included within the DOT description of her other past work as a "general clerk" which is classified as light work.  (Pl. Br. 19-21) (citing R. 69-71).  Finally, Plaintiff argues that the record reveals that she performed the job only "off and

on" from 2007 to 2009 and "calls into question whether she performed the job long enough for it to qualify as PRW, and whether she performed it at substantial gainful activity levels." Id. at 22.

The Commissioner argues that the ALJ applied the three-phase analysis from SSR 82-62 and Winfrey, and that she relied on VE testimony and other record evidence to conclude that Plaintiff can perform her past relevant work as a case manager, and that the ALJ's finding is reasonable and supported by the record. (Comm'r Br. 10-13). She argues that the ALJ made findings of fact regarding the demands of work as a case manager and that Plaintiff did not quantify the amount of walking she performed on that job and thereby failed her burden to prove she cannot perform past relevant work. Id. at 13-14. She argues that even if the court finds the ALJ failed to make findings regarding the work as Plaintiff performed it, she made findings regarding the demands as it is generally performed, and that is sufficient to find Plaintiff can perform the work. Id. at 14 (citing SSR 82-61). The Commissioner argues that the evidence reveals that the erroneous DOT job code is merely a scrivener's error and should not result in remand. Id. at 14-15 (citing Poppa v. Astrue, 569 F.3d 1167, 1172 n.5 (10th Cir. 2009); and Davis v. Erdmann, 607 F.2d 917, 919 n.1 (10th Cir. 1979) ("While we may not supply a reasoned basis for the agency's action that the agency itself has not given . . . we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." (citations omitted)). Finally, the Commissioner argues that the ALJ

specifically discussed whether the work at issue was performed long enough and provided sufficient remuneration to qualify as past relevant work. (Comm'r Br. 15-16).

## A. Step Four Standard

At step four of the sequential evaluation process, the ALJ is required to make specific findings in three phases. Winfrey, 92 F.3d at 1023 (citing SSR 82-62, 1975-1982 West's Soc. Sec. Reporting Serv., Rulings 809 (1983)). In phase one, "the ALJ should first assess the nature and extent of [the claimant's] physical limitations." Winfrey, 92 F.3d at 1023. In phase two, the ALJ must "make findings regarding the physical and mental demands of the claimant's past relevant work." Winfrey, 92 F.3d at 1024. Finally, in phase three, the ALJ must determine "whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." Id., 92 F.3d at 1023. These findings are to be made on the record by the ALJ. Id. at 1025; see also, SSR 82-62, 1975-1982 West's Soc. Sec. Reporting Serv., Rulings, at 813 ("decision must contain ... specific findings of fact" regarding each of the three phases).

The Tenth Circuit has explained that an ALJ may properly rely upon VE testimony in making her findings at phase two and phase three of step four. Doyal, 331 F.3d at 761. The ALJ may not delegate the step-four analysis to the VE. He may, however, rely on information supplied by the VE regarding the demands of plaintiff's past relevant work and whether a person with plaintiff's RFC could meet those demands, and he may accept the VE's opinions. Id. The critical distinction is whether the ALJ relied upon the VE

testimony in making the findings or whether the ALJ delegated the phase two and phase three findings to the VE.  Id.  Where the ALJ made the phase two and phase three findings and quoted the VE testimony approvingly in support of those findings, he has properly relied upon the VE testimony.  Id., 331 F.3d at 761.

**B.      The ALJ's Findings**

The ALJ found that Plaintiff is capable of performing past relevant work as a case manager, and explained her finding:

> The claimant's work history and income records support work as a regional case manager (intake worker) (195.107-030, with a sedentary exertional level reported by the claimant and in the Dictionary of Occupational Tales [sic] (DOT), SVP7).  (Exhibit 1D-10D, 25E[.]  See also hearing testimony by the expert)[.]  The vocational expert, after a review of the file, submitted a report that states that this job meets the standards for past relevant work set forth by the Agency.  (20 CFR 404.1565, 416.965)[.]  The undersigned finds that the claimant's income from the position shows that they [sic] performed the work at the level of substantial gainful activity, that the time on the job was adequate to perform the work and that the work was performed in the last fifteen years, thus confirming that his [sic] job is past relevant work.
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed.  The vocational expert, in response to a question from the undersigned that accurately reflected the above residual functional capacity, compared the requirements of the case manager position to the claimant's restrictions and found that the claimant was capable of this job in both actual and general performance. The undersigned, after a review of the evidence and a comparison between the functioning of the claimant and the requirements of the position, concurs with the vocational expert and so finds that the claimant can perform this past relevant work.

(R. 22).

**C.      Analysis**

17

Plaintiff's argument that the ALJ did not make specific findings regarding the demands of past relevant work is belied by the ALJ's finding quoted above that the job of a regional case manager (intake worker) is at a sedentary exertional level and an SVP (Specific Vocational Preparation) level of 7. (R. 22). Moreover, the ALJ's explanation confirms that she did not merely accept the VE's step four assessment. Rather, she considered the record of Plaintiff's income from the work, and determined that it showed the work was performed at the level of substantial gainful activity, that the time performed was adequate to learn the work, and that the work was performed within the fifteen years before the ALJ's decision issued on June 15, 2016. Plaintiff does not address these findings, and did not reply when the Commissioner pointed them out.

Plaintiff suggests that more is required when she argues that "the ALJ did not mention any other physical or mental demands [(other than a range of sedentary work)] required for the regional case manager (intake worker) position, as required in phase two of the step-four analysis." (Pl. Br. 17). However, Plaintiff ignores the finding that the job requires an SVP of 7, and that the ALJ noted that the VE responded to his hypothetical question (containing Plaintiff's limitations) that the job of regional case manager was within those limitations, and that such a hypothetical person (as Plaintiff was found to be) was able to perform the job. Moreover, Plaintiff does not identify any requirement of the job (other than "a lot of walking," which will be addressed hereinafter) which she is unable to perform. In other words, Plaintiff has not shown that greater explanation was required or that she was prejudiced by any specific deficiency.

Plaintiff argues that there was insufficient information regarding her past relevant work as a case manager. She points out that she did not provide requested information regarding this job on her application forms, and that the VE at the first hearing stated that she needed more information to evaluate the requirements of the job. (Pl. Br. 17). But, she acknowledges that she was questioned at the first hearing regarding that information. Therefore, she cannot now argue that the information given was insufficient to determine the demands of that work. Plaintiff was represented at both hearings, the issue was brought up and addressed, and the ALJ is justified to rely upon Plaintiff's counsel to identify issues needing further development.

> [I]n cases such as this one where the claimant was represented by counsel, "'the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present [the] claimant's case in a way that the claimant's claims are adequately explored,' and the ALJ 'may ordinarily require counsel to identify the issue or issues requiring further development.'" [Branum v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004)] (quoting Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997)).

Maes v. Astrue, 522 F.3d 1093, 1096 (10th Cir. 2008). Counsel identified none. Moreover, it is Plaintiff's burden to prove disability, and her apparent reliance on her own failure or refusal to support her claim by completing forms provided by the SSA raises serious questions in the court's consideration.

The court agrees with Plaintiff that her testimony that the job as she performed it required "a lot of walking," begs consideration of whether a sedentary exertion level could meet the demands of the job as she performed it. And, as she suggests, the ALJ did not specifically discuss that issue. Therefore, the court cannot find that the record

19

evidence supports the finding that she could meet the demands of the job as she performed it. Nevertheless, as the Commissioner points out, if Plaintiff can perform her past relevant work as it is normally performed in the economy, she must be found not disabled even if she cannot perform the work as she performed it. The ALJ found that she could, the record evidence supports that finding, and the court finds no error in the ALJ's finding.

Finally, the court finds that the ALJ's citation of the <u>DOT</u> job code for a Social Worker, Medical, 195.107-030, is merely a scrivener's error, and does not require remand in this case. As Plaintiff acknowledges, the job at issue was specifically discussed at the first hearing. (R. 69-72). Based upon Plaintiff's testimony, the VE testified that the regional case manager (intake worker) job was <u>DOT</u> code 195.107-010 (R. 71), and that Plaintiff could perform that job. (R. 72). At the second hearing, a different VE appeared. However, before the hearing he submitted a "Vocational Summary Report" noting that Plaintiff's work history included the job as a case manager, and identifying the <u>DOT</u> code for that job as 195.107-030. (R. 434). At the second hearing, the ALJ provided a hypothetical question to the VE identical to the hypothetical at the first hearing, and asked if an individual met that hypothetical, "Would she be able to do any past work?" (R. 47) (compare R. 71-72). The VE responded, "Yes, Your Honor, as the case manager." <u>Id.</u>

As noted above, the first VE provided the job code for a "case manager" or "intake worker" as "195.107-010." (R. 71) ("Intake worker is the case manager position."). The

second VE also identified the job as a "Case Manager," as sedentary work with an SVP of 7, and provided the DOT code as "195.107-030." (R. 434). However, as Plaintiff points out, the job identified in the code presented by the second VE is a medical social worker, and Plaintiff's testimony "does not remotely match the description of the job for the DOT code given." (Pl. Br. 19) (see also, DICOT 195.107-030, 1991 WL 671574). Plaintiff described her work as a case manager: "A lot of it was computer, a lot of traveling, a lot of walking. I prepared documents for students to get student loans through vouche[r]s, farm workers to find permanent positions in work. It was a lot of computer, lot of traveling." (R. 70). To be sure, the very general description given by Plaintiff does not resemble the job description of a Medical Social Worker:

> Assists patients and their families with personal and environmental difficulties which predispose illness or interfere with obtaining maximum benefits from medical care: Works in close collaboration with physicians and other health care personnel in patient evaluation and treatment to further their understanding of significant social and emotional factors underlying patient's health problem. Helps patient and family through individual or group conferences to understand, accept, and follow medical recommendations. Provides service planned to restore patient to optimum social and health adjustment within patient's capacity. Utilizes community resources to assist patient to resume life in community or to learn to live within limits of disability. Prepares patient histories, service plans, and reports. Participates in planning for improving health services by interpreting social factors pertinent to development of program. Provides general direction and supervision to workers engaged in clinic home service program activities. Works in general hospitals, clinics, rehabilitation centers, drug and alcohol abuse centers, or related health programs.

DICOT 195.107-030. However, Plaintiff's very general description fits nicely within the job description of a Caseworker:

Counsels and aids individuals and families requiring assistance of social service agency: Interviews clients with problems, such as personal and family adjustments, finances, employment, food, clothing, housing, and physical and mental impairments to determine nature and degree of problem. Secures information, such as medical, psychological, and social factors contributing to client's situation, and evaluates these and client's capacities. Counsels client individually, in family, or in other small groups regarding plans for meeting needs, and aids client to mobilize inner capacities and environmental resources to improve social functioning. Helps client to modify attitudes and patterns of behavior by increasing understanding of self, personal problems, and client's part in creating them. Refers clients to community resources and other organizations. Compiles records and prepares reports. Reviews service plan and performs follow-up to determine quantity and quality of service provided client and status of client's case. Accesses and records client and community resource information, manually or using computer equipped with keyboard, to input and retrieve information.

DICOT 195.107-010

The first VE clearly based her finding regarding the case manager (intake worker) job upon Plaintiff's testimony. The <u>DOT</u> includes "Intake Worker" as an alternate name for the job relied upon by the first VE and the ALJ relied on the first VE's testimony to find that Plaintiff was able to perform the job of a "regional case manager (intake worker)." (R. 22). The hypothetical questions at the first and second hearings were identical, and both the first and second VE responded to that hypothetical, that an individual with those limitations would be able to perform the job as a "case manager" (R. 47, 71-72), and the second VE identified the case manager job in his "Vocational Summary Report" as Plaintiff's past relevant work. (R. 434). The <u>DOT</u> code used by the second VE does not describe the case manager (intake worker) job, but Plaintiff's description of that work fits comfortably within the <u>DOT</u> job description for the case

22

manager (intake worker) job. And, the <u>DOT</u> job codes used by the first and second VE differ only in the digit used in the eighth digit of the job code--"1" by the first VE and "3" by the second VE. For these reasons, the court finds that the use of the digit "3" by the second VE was merely a scrivener's error, and the ALJ merely followed that error in drafting her decision.

The court finds no error as alleged by Plaintiff in the ALJ's decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated October 2, 2018, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**